IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL A. COMBS,<br><br>           Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE<br>Commissioner of Social Security of the United States of America,<br><br>           Defendant. _____/ | No. C 08-1728 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

Plaintiff Carl A. Combs ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue ("Defendant"), denying his claim for disability insurance benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  (Dkt. ## 22, 23.)  Having read and considered the parties' papers, the administrative record below, and the relevant legal authority, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment for the reasons set forth below.

## II.  BACKGROUND

### A.     Education and Work Experience

Plaintiff was born on May 15, 1963.  (Administrative Record ("AR") 16.)  He completed high school and served in the United States Army.  (AR 16.)  Upon being honorably discharged, and until his alleged disability set in, Plaintiff worked as a carpet layer and floor cover installer.  (AR 16.)  He is unmarried and lives alone in Oakland.  (AR 16.)

**B.     Medical History**

Plaintiff's disability application appears to stem from an automobile accident on August 23, 2001, in which another driver rear-ended him. (AR 17, 180.) Although the administrative record contains some mention of medical treatment immediately after the accident, (AR 180-81), the earliest treatment of record is dated January 13, 2003. On that date, Alfredo F. Fernandez, M.D., performed an orthopedic Agreed Medical Evaluation. (AR 179-89.) Dr. Fernandez diagnosed sprains of the cervical spine, mild right-sided radiculopathy, a lumbar sprain, a disability to the neck and upper extremities that precluded very heavy work, and a permanent disability to the low back that precluded very heavy lifting. (AR 186-87.) Dr. Fernandez attributed Plaintiff's disabilities to the August 23, 2001 automobile accident. (AR 188.) Dr. Fernandez recommended occasional doctor visits, three to four times a year for maintenance, and the judicious use of nonsteroidal anti-inflammatory medication, but opined that Plaintiff could resume his usual and customary work. (AR 188-89.)

On April 21, 2004, Hayden O. Evans, M.D., completed Magnetic Resonance Imaging ("MRI") of Plaintiff's cervical and lumbar spines. (AR 128-29.) Dr. Evans provided the following impressions at to Plaintiff's cervical spine: (1) Small focal left paracentral disc bulge at L4-5 with mild effacement of the thecal sac, without significant effacement of the spinal cord; (2) Mild dorsal osteophytes at C3-4 and C5-6 without evidence of spinal stenosis or narrowing of the neural foramina. (AR 128.) As to Plaintiff's lumbar spine, Dr. Evans noted no evidence of disc herniation or spinal stenosis. (AR 129.)

On July 7, 2004, Calvin Pon, M.D., completed a consultative orthopedic disability evaluation. (AR 130-32.) Dr. Pon diagnosed "chronic neck pain probably secondary to cervical disk disease" and "chronic low back pain probably secondary to lumbar disk disease." (AR 131.) Dr. Pon listed Plaintiff's Functional Capacity as follows:

> There is no restriction in standing and/or walking. There is no restriction in sitting. Stooping should be limited to occasionally. Crouching, kneeling and squatting should be limited to occasionally. There is no limitation in climbing stairs, ladders or crawling. There is no restriction in performing bilateral pushing and pulling, arm/hand

> controls. There is no restriction in performing bilateral pushing, leg/foot controls. He should be able to lift and carry up to 25 pounds frequently and up to 50 pounds occasionally. There are no limitations in claimant's ability to perform reaching bilaterally. There is no limitation in claimant's ability to perform gross and fine manipulative tasks with both hands.

(AR 132.)

Dr. Pon also noted that Plaintiff was able to drive and take public transportation. (AR 132.)

On July 26, 2004, Ida J. Newton, M.D., completed a Physical Residual Functional Capacity Assessment. (AR 133-40.) Dr. Newton reported that, as to exertional limitations, Plaintiff could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds, stand and/or walk about 6 hours in an 8-hour day, sit about 6 hours in an 8-hour day, and had no push and/or pull limitations. (AR 134.) As to postural limitations, Plaintiff could frequently climb and balance, and occasionally stoop, kneel, crouch, and crawl. (AR 135.) Dr. Newton reported that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (AR 136-37.)

On August 27, 2004, Dr. Fernandez reexamined Plaintiff. (AR 172-78.) Dr. Fernandez noted that Plaintiff's condition had worsened since he last saw him, resulting in an increased permanent disability and an inability to resume his usual and customary work as a floor covering installer. (AR 176.) However, he stated that he did not have Plaintiff's most recent MRI and that his diagnosis would be fully characterized once the new studies were revealed. (AR 176.)

On May 23, 2005, a Dr. Germans examined Plaintiff. (AR 146.) He diagnosed Plaintiff with cervical and lumbar sprain, cephulgia, and thoracic lumbar sprain. (AR 146.) Dr. Germans recommended that Plaintiff sleep on a firm mattress and be re-examined once a week for the next four weeks. (AR 146.)

On May 24, 2005, Jerrold M. Sherman, M.D., performed an Orthopedic Examination and Evaluation. (AR 143-45.) Dr. Sherman noted that Plaintiff could "sit, stand and walk for six hours during the course of an eight-hour day and does not require a cane, brace or assistive device to ambulate. He can frequently lift 50 pounds and occasionally lift 100 pounds. He has no restrictions regarding forward bending at the waist, squatting, pushing, pulling, grasping, or fine manipulation

1  activities with the hands." (AR 145.)

2  On June 8, 2005, Dr. Fernandez reviewed Plaintiff's MRI records and prepared a supplement
3  report. (AR 169-71.) Dr. Fernandez concluded that Plaintiff's permanent disability to the cervical
4  spine had increased from a preclusion from very heavy work to heavy lifting, but that he could
5  continue doing his "usual and customary work." (AR 170.) Dr. Fernandez recommended six to
6  eight doctor visits per year, and the "judicious" use of nonsteroidals and mild analgesics. (AR 170.)

7  On December 30, 2005, Meredith Saunders, M.D., completed a Work Status Report. (AR
8  197.) Dr. Saunders concluded that Plaintiff could return to work as of that date, but could not stoop,
9  bend, or climb. (AR 197.) Additionally, Dr. Saunders instructed Plaintiff to limit lifting, pulling
10 and pushing to five pounds. (AR 197.)

11 Beginning on January 3, 2006, and continuing through February 15, 2006, David Lindsey,
12 M.D., completed regular work study reports regarding Plaintiff's condition. (AR 196.) Dr. Lindsey
13 reported that Plaintiff could return to work beginning January 3, 2006, but he instructed Plaintiff not
14 to stoop, bend, or climb, and limited him to lifting, pulling, and/or pushing no more than five
15 pounds. (AR 196.) He concluded that although Plaintiff had improved, it was slower than expected.
16 (AR 196.) Dr. Lindsey's January 10, 2006 report notes that Plaintiff could return to work the same
17 day, but instructs Plaintiff to limit his stooping or bending and lifting, pulling, and/or pushing to no
18 more than five pounds. (AR 195.) On February 1, 2006, Dr. Lindsay reported that Plaintiff's status
19 had worsened and again instructed him to limit his stooping, bending, and climbing stairs, and to
20 limit any lifting, pulling, and/or pushing to five pounds. (AR 192.) In his February 15, 2006 Work
21 Status Report, Dr. Lindsey reported that Plaintiff was able to return to work that same day, although
22 he noted no significant improvement. (AR 191.) Dr. Lindsey again instructed Plaintiff not to stoop,
23 bend, or climb stairs, and to limit lifting, pulling, and/or pushing to five pounds. (AR 191.)

24 On February 17, 2006, Dr. Evans performed an MRI of Plaintiff's lumbar and cervical spine.
25 (AR 154-56.) Dr. Evans reported that Plaintiff's disc height and signal were normal, and made the
26 following impression: "No demonstration of significant focal disc protrusion or spinal stenosis."
27 (AR 154.) As to Plaintiff's cervical spine, Dr. Evans reported that the "left lateral disc protrusion

and dorsal osteophytic ridging at C4-5 with some effacement of the thecal sac, mild flattening of the spinal cord and moderate narrowing of neural foramen on the left." (AR 155.)

On February 21, 2006, Robert E. Lieberson, M.D., conducted a Neurosurgical Consultation Special Report. (AR 158-59.) In his report, Dr. Lieberson states that he is "unable to explain the patient's diffuse, global, and extreme complaints," that he was no sure why Plaintiff needs a cane, and that he would "recommend that there is no surgery likely to benefit." (AR 158.) Dr. Lieberson recommended Plaintiff be considered "permanent and stationary." (AR 158.) Dr. Lieberson also completed a Treating Physician's Progress Report, noting that Plaintiff complained of "general pain" and "general weakness," and recommended that Plaintiff consider chronic pain management. (AR 159.)

On July 28, 2006, Dr. Fernandez re-examined Plaintiff. (AR 162-68.) Dr. Fernandez diagnosed chronic cervical and lumbar sprain, and discogenic disc disease in the cervical spine, but opined that Plaintiff was permanent and stationary. (AR 166.) Dr. Fernandez further opined that Plaintiff would have been temporarily totally disabled from January of 2005 to April of 2005, and then would have been able to return to work with restrictions precluding heavy work. (AR 166-67.) Dr. Fernandez recommended the use of nonsteroidals, mild analgesics and occasional stronger analgesics, physical therapy or chiropractic treatments during times of flare-ups, and epidural injections twice a year. (AR 167.)

On October 13, 2006, Arun M. Mehta, M.D., completed an initial orthopedic consultation. (AR 251-56.) Dr. Mehta made the following findings: (1) the examination of the cervical spine shows neck pain on the left side, with 75 percent of normal range of motion; (2) examination of the upper extremities was within normal limits; (3) examination of the mid back was within normal limits; and (4) examination of the lumbar spine revealed tenderness at the L4-5 region, with weakness on the right side and hyperesthesia at L5-S1 distribution on the right side. (AR 254.) Dr. Mehta diagnosed chronic cervical and lumbosacral spine strain with cervical and lumbosacral spine disc disease, and recommended a pain management referral. (AR 255.) Dr. Mehta also completed a Primary Treating Physician's Progress Report, in which she recommended that Plaintiff could return

to work as of that date, but limited his lifting, pulling, and pushing to up to 10 pounds. (AR 190.)

On December 8, 2006, Dr. Mehta provided a Primary Treating Physician's Progress Report. (AR 198.) Dr. Mehta did not find significant improvement, but reported that Plaintiff could return to work as of that date, as long as he limited his lifting, pulling, and pushing to 10 pounds. (AR 198.)

On February 27, 2007, Jacob Rosenberg, M.D., completed an initial evaluation. (AR 200-04.) At the time, Plaintiff stated that his ability to lift, stand, walk, and sit is limited, and that his neck and low back pain had severely increased after working as a temporary floor covering installer from August 2004 through December 2004. (AR 200.) Plaintiff indicated that he could stand for 20 to 25 minutes and sit for 45 minutes, but felt better lying down. (AR 200.) Dr. Rosenberg assessed limitation in range of motion and facet problems in Plaintiff's upper extremity, and degenerative disc and joint changes in his cervical spine. (AR 203.) Dr. Rosenberg recommended a plan that included Cymbalta and minimal pain medications to improve Plaintiff's function. (AR 203.) He also recommended nerve conduction studies and branch blocks to see if Plaintiff's headache could be alleviated. (AR 203.)

On May 6, 2007, Ute Kollath, Ph.D., prepared a summary report of Plaintiff's Complete Psychological Evaluation, which she performed on April 30, 2007. (AR 205-13.) Dr. Kollath concluded that Plaintiff's cognitive work-related abilities were unimpaired in most areas, with only mild impairments in his ability to follow complex/detailed instructions and his ability to maintain adequate pace or persistence to perform complex tasks. (AR 208-09.)

On May 25, 2007, Dr. Rosenberg performed "cervical facet medial branch blocks, third occipital nerve arch at C2, C3, and C4 for a total of five injections." (AR 266-67.) After the injections, Plaintiff had complete relief of his left neck pain and suboccipital pain. (AR 266.) His range of motion in the cervical spine "improved dramatically, and he could rotate to the left normally, which he could not do previously." (AR 266.)

On July 11, 2007, Dr. Rosenberg completed a Residual Functional Capacity Assessment. (AR 214-21.) Dr. Rosenberg reported that Plaintiff could: (1) Occasionally lift and/or carry less than ten pounds; (2) Frequently lift and/or carry less than ten pounds; (3) Stand and/or walk (with

normal breaks) for a total of less than two hours in an eight-hour workday; (4) Sit (with normal breaks) for a total of less than about six hours in an eight-hour workday; and (5) Push and/or pull (including operation of hand/and/or foot controls) in upper extremities to 15 degrees intermittent and in lower extremities to 30 degrees intermittent. (AR 215.) Dr. Rosenberg noted no postural limitations, (AR 216), no manipulative limitations except limited reaching in all directions, (AR 217), and no communicative or environmental limitations. (AR 218.)

On July 25, 2007, Plaintiff sought treatment at San Leandro Hospital on an emergency basis. (AR 225-29.) Kenneth Kumamoto, M.D., noted general back pain, but no obvious sign of bone or nerve damage. (AR 225.) Dr. Kumamoto prescribed Hydrocodone and Acetaminophen. (AR 226.)

On September 7, 2007, Dr. Rosenberg performed a "Right sacroiliac joint injection," at which time he assessed Plaintiff with a "sacroiliac joint problem." (AR 264.)

On September 28, 2007, Dr. Rosenberg performed additional "medial branch rhizotomies, third occipital nerve; C2, C3,, C4, and C5 medial branches." (AR 262-63.) Dr. Rosenberg noted that the procedure provided "essentially complete relief with dissipation of headaches." (AR 263.)

On October 26, 2007, Dr. Rosenberg performed a "Left SI joint injection with arthrography, Isovue contrast, fluouroscopic control, and IV sedation." (AR 259-61.) At that time, Plaintiff experienced "complete pain relief with no left or right-sided low back pain, but some right-sided numbness." (AR 260.) Dr. Rosenberg noted that Plaintiff would be reassessed in the next six weeks to see whether he improved significantly on a functional basis and, if not, to consider whether a multidisciplinary pain treatment program would be appropriate. (AR 259.)

**C.     Procedural Background**

On February 8, 2005, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on January 1, 2005. (AR 15.) Plaintiff was 41 years old at the time he filed his application. (AR 15.) On June 5, 2005, the Social Security Administration ("SSA") initially denied his application. (AR 40-44.) Plaintiff filed a timely request for hearing on November 18, 2005. (AR 15.)

On March 12, 2007, Administrative Law Judge ("ALJ") Steven B. Berlin heard the case.

(AR 15.) Plaintiff appeared at the hearing represented by his attorney, Ms. Aggie Rose-Chavez. (AR 15.) Stephen P. David testified as an impartial vocational expert. (AR 15.) On September 24, 2007, ALJ Berlin concluded that Plaintiff was not disabled under the Social Security Act. (AR 21.) ALJ Berlin's decision became the final decision of the Commissioner when the Appeals Council declined to review it on January 30, 2008. (AR 5.)

### D.     The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, ALJ Berlin determined that Plaintiff had not performed substantial gainful activity since his alleged onset disability on January 1, 2005. (AR 16-17.)

At step two, the ALJ must determine, based on medical findings, whether claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.[1] If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, ALJ Berlin determined that the evidence established that Plaintiff suffered from severe "chronic cervical and lumbar sprain; and mild degenerative disc disease, cervical spine." (AR 20.) ALJ Berlin determined that Plaintiff's "migraine headaches are not severe on durational grounds." (AR 20.)

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the

---

[1] At step two, "severe" means any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis. *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-4 (1987). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id*. at 158.

1  third step, where the ALJ must determine whether the claimant has an impairment or combination of
2  impairments which meets or equals an impairment in the Listing of Impairments. 20 C.F.R. §
3  404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's impairment either meets the listed
4  criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively
5  presumed to be disabled. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Here, ALJ Berlin
6  determined that Plaintiff did not have any "impairment or combination of impairments meeting or
7  equaling in severity any impairment set forth in the Listing of Impairments found at 20 C.F.R. § 404,
8  Subpt. P, App. 1." (AR 20.)

9  The fourth step of the evaluation process requires that the ALJ determine whether the
10  claimant's Residual Functional Capacity ("RFC") is sufficient for him to perform past relevant work.
11  20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite
12  limitations caused by medically determinable impairments. 20 C.F.R. § 416.945(a). In assessing an
13  individual's RFC, the ALJ must consider his or her symptoms (including pain), signs and laboratory
14  findings, together with other evidence. 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c). Here, ALJ
15  Berlin determined that Plaintiff has the RFC to:

> Lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. He can occasionally stoop, kneel, crouch, and crawl. There are no other non-exertional limitations (20 C.F.R. §§ 404.1545, 416.945). This residual functional capacity comports with a limited range of medium work activities.

20  (AR 20.)

21  In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs
22  existing in significant numbers in the national economy which the claimant can perform consistent
23  with the medically determinable impairments and symptoms, functional limitations, age, education,
24  work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). Here, ALJ
25  Berlin determined that Plaintiff is not capable of performing his past relevant work as a carpet later
26  or floor cover installer. (AR 20.) However, he opined that Plaintiff "retains the capacity to do many
27  unskilled, entry-level, sedentary jobs," which include employment as a "Call-Out Operator" and/or

"Table Worker." (AR 20.) As such, ALJ Berlin determined that Plaintiff is not disabled. (AR 21.)

## III. LEGAL STANDARD

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id*. Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (citation omitted).

## IV. ISSUES

Plaintiff seeks reversal of ALJ Berlin's denial of disability insurance benefits, arguing that:

(1) The ALJ improperly rejected the opinions of the treating physician, without legally adequate reasons for doing so;

(2) The ALJ improperly discounted Plaintiff's credibility, without clear and convincing reasons for so doing; and

(3) The ALJ's improperly evaluate Plaintiff's RFC and failed to include all Mr. Comb's limitations in the hypothetical posed to the vocational expert as required by law.

## V. DISCUSSION

**A.   Whether the Court Should Consider Evidence Not Before the ALJ.**

As a preliminary matter, Plaintiff tendered new evidence to the Appeals Council after the ALJ rendered his decision, but Defendant argues that he failed to argue before this Court that such

evidence warranted a new hearing. The new evidence consists of treatment notes from Dr. Mehta, dated October 13, 2006 and November 3, 2006 (AR 251-56); treatment notes from Dr. Rosenberg, dated May 25, September 7, September 28, and October 26, 2007 (AR 259-67); and a letter from attorney Aggie Rose-Chavez to the Appeals council dated December 21, 2007. (AR 248-50.) However, when the Appeals Council denies review after evaluating the entire record, including newly submitted evidence, that new evidence becomes a part of the administrative record to be reviewed by this court on appeal. *Ramirez*, 8 F.3d at 1452. In *Harmon v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000), the Ninth Circuit reiterated that courts "may consider the additional materials because the Appeals Council addressed them in the context of denying [the claimant's] request for review." Thus, in reviewing the ALJ's decision, the Court must consider the evidence before both the ALJ and the Appeals Council.

**B.     Whether ALJ Berlin Properly Discredited Plaintiff's Treating Physician's Opinion**.

Plaintiff first argues that the ALJ failed to provide legally adequate reasons for discrediting the opinion of Dr. Rosenberg. When the opinion of a treating or an examining doctor is not contradicted by another doctor, the ALJ may reject that opinion only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the opinion is contradicted by another doctor, that opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. The ALJ is responsible for resolving any such conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. Similarly, the ALJ is responsible for resolving ambiguities in the evidence. *Id.* An examining physician's findings are entitled to the same weight when the examination is obtained by the Commissioner as when it is procured by the claimant. *Lester*, 81 F.3d at 832.

In considering medical opinions, the ALJ is required to give weight to medical opinions discussing the "nature and severity of [the claimant's] impairment(s)," but not to a physician's ultimate opinion regarding a claimant's disability or employability status. *See* 20 C.F.R. §416.927(a)(2); 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

1  Here, ALJ Berlin provided two specific reasons for rejecting Dr. Rosenberg's assessment: (1) it was not supported by any other examiner, and (2) his characterization of Dr. Rosenberg as a non-treating doctor who prepared Qualified Medical Exam Reports in preparation for litigation to help Plaintiff in a pending worker's compensation claim. (AR 19.)

1.  <u>Whether Dr. Rosenberg's assessment is supported by any other examiner</u>

As to the first reason, ALJ Berlin concluded that Plaintiffs alleged symptoms were not supported by objective medical testing. (AR 18.) In reaching this conclusion, the ALJ considered Dr. Lieberson's Neurological Consultation Special Report, in which he states that he is "unable to explain the patient's diffuse, global, and extreme complaints. I am not sure why he needs the cane at this point." (AR 158.) Dr. Lieberson noted that Plaintiff's range of neck motion was near zero, but the MRI of his neck and low back showed no more than minimal degenerative disc disease, consistent with his age. (AR 158.) He recommended chronic pain management. (AR 158.)

ALJ Berlin also considered Dr. Sherman's Orthopedic Examination and Evaluation. (AR 143-45.) Dr. Sherman found that Plaintiff could do heavy work, including frequently lifting 50 pounds and occasionally lifting 100 pounds. (AR 145.) He found no restrictions regarding forward bending at the waist, squatting, pushing, pulling, grasping, or fine manipulation activities with the hands, and also found that he did not require a cane, brace or assistive device to ambulate. (AR 145.)

In his decision, ALJ Berlin also considered Dr. Fernandez's examination report dated July 28, 2006. (AR 162-68.) Dr. Fernandez found Plaintiff temporarily disabled from January to April 2005, then found that his only work restriction is the preclusion of "very heavy work." (AR 167.) Dr. Fernandez, like Doctors Lieberson and Sherman, found that Plaintiff did not need a cane. (AR 167.) Thus, the Court finds that ALJ Berlin rejected Dr. Rosenberg's opinion for specific and legitimate reasons that are supported by substantial evidence in the record. *Id*. at 830-31. Further, although Dr. Rosenberg's findings might conflict with the findings provided by the other doctors, the ALJ is responsible for resolving any such conflicts in medical testimony. *Magallanes*, 881 F.2d at 750.

In his motion, Plaintiff points to portions of Drs. Mehta, Lindsey, and Saunders' opinions, (AR 190-98), and argues that the ALJ committed error in ignoring the opinions of those physicians. However, these opinions consist of unsupported checklist opinions, devoid of references to any supporting clinical findings, laboratory or other diagnostic test results, signs or symptoms. Thus, ALJ Berlin permissibly rejected them. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected opinion consisting of check-off boxes on a form, without supporting findings); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Because the opinions would not have been supportable in the first instance, Plaintiff can show no harm in the ALJ's omission. *Crane*, 76 F.3d at 253; *Bayliss*, 427 F.3d at 1216.

Plaintiff also directs the Court's attention to the opinions of Drs. Mehta and Fernandez who, like Dr. Rosenberg, recorded positive straight leg raising. (AR 254, 176.) However, it is not clear that these opinions, as a whole, support Dr. Rosenberg's opinion. Moreover, even if they did, the ALJ implicitly rejected these opinions for the specific and legitimate reasons discussed above. As the ALJ's decision is supported by substantial evidence, the Court finds that it must be affirmed.

Finally, as part of his argument regarding Dr. Rosenberg, Plaintiff also contends that the ALJ improperly rejected the psychological opinion of Dr. Kollath. (AR 205-10.) Dr. Kollath concluded that Plaintiff's cognitive work-related abilities were unimpaired in most areas, with only mild impairments in his ability to follow complex/detailed instructions and his ability to maintain adequate pace or persistence to perform complex tasks. (AR 208-09.) However, even if the Court were to find that ALJ Berlin should have accepted these findings, the result would still be the same - Dr. Kollath opined that even with borderline intellectual functioning, Plaintiff was capable of working and had no difficulty following simple and moderately complex directions. (AR 208-09.) Accordingly, the Court finds no legal error. 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.")

2. <u>Whether the ALJ's properly characterized Dr. Rosenberg as a non-treating doctor</u>

Next, Plaintiff argues that the ALJ improperly characterized Dr. Rosenberg as a non-treating

physician. ALJ Berlin based this finding on his opinion that Plaintiff hired Dr. Rosenberg for the sole purpose of supporting his worker's compensation claim. (AR 19) ("As the other physicians were treating the claimant, and this doctor (Dr. Rosenberg) was hired specifically to support the claimant's worker's compensation case (as opposed to the Agreed Medical Exam), I give little weight to the Qualified Medical Exam report/opinion." However, as discussed above, even if the ALJ erred in his characterization of Dr. Rosenberg, he provided specific and legitimate reasons for rejecting his opinion, and these reasons are supported by substantial evidence. Accordingly, the Court finds this to be a harmless error.

### C.  Whether the ALJ Properly Discredited Plaintiff's Testimony.

Next, Plaintiff argues that ALJ Berlin improperly discounted his credibility with regard to his pain and functional limitations without clear and convincing reasons for so doing.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). "The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "'Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.'" *Id.* (quoting *Smolen*, 80 F.3d at 1282).

Second, if the ALJ determines that the claimant has presented objective medical evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281)). Such specificity is crucial so as to enable effective judicial review. *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific,

1 clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the]
2 Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p
3 (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any
4 subsequent reviewers the weight the adjudicator gave to the individuals statements and reasons for
5 that weight"). Where the ALJ "has made specific findings justifying a decision to disbelieve an
6 allegation of excess pain, and those findings are supported by substantial evidence in the record,"
7 courts must not engage in second-guessing. *Fair*, 885 F.2d at 604.

8 In his decision, ALJ Berlin determined that Plaintiff's symptom allegations "are not credible
9 or reliable, in view of the lack of objective medical signs or findings; the existence of protracted
10 workers' compensation litigation; and the invalid results at the psychological consultative
11 examination." (AR 19.) The Court finds that at least two of the ALJ's reasons - the lack of objective
12 medical signs or findings and the invalid results at the psychological consultative examination -
13 constitute clear and convincing reasons for rejecting Plaintiff's subjective pain and symptom
14 testimony.[2]

15 First, as discussed above, the ALJ considered the medical evidence of record and determined
16 that it did not support Plaintiff's symptom allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857
17 (9th Cir. 2001) (medical evidence is relevant in the credibility assessment). ALJ Berlin considered
18 Dr. Lieberson's Neurological Consultation Special Report, in which he states that he is "unable to
19 explain the patient's diffuse, global, and extreme complaints. I am not sure why he needs the cane at
20 this point." (AR 158.) He recommended chronic pain management. (AR 158.) ALJ Berlin also
21 considered Dr. Sherman's Orthopedic Examination and Evaluation, in which he found that Plaintiff
22 could do heavy work, found no restrictions regarding forward bending at the waist, squatting,
23 pushing, pulling, grasping, or fine manipulation activities with the hands, and also found that he did
24 not require a cane, brace or assistive device to ambulate. (AR 145.) Dr. Fernandez found that
25 Plaintiff's only work restriction is the preclusion of "very heavy work," and also found that Plaintiff

---

[2] As it has no effect on the analysis herein, the Court makes no decision regarding the workers' compensation issue.

did not need a cane. (AR 167.)

Second, ALJ Berlin noted that Plaintiff appeared credible at the hearing based on his demeanor. Given that he found a lack of objective support for his reported symptoms, the ALJ ordered a psychological consultative examination with Dr. Kollath. (AR 19.) The ALJ found that much of the testing, as indicated in Dr. Kollath's report, was invalid, and determined that the invalid results of the psychological consultative examination tended to show that Plaintiff's symptom allegations were not credible or reliable. (AR 19.) Plaintiff argues that Dr. Kollath noted that his test results were "considered to be a fair representation of the claimant's current psychological functioning," (AR 208), yet he fails to address the inconsistency between this statement and Dr. Kollath's invalidity findings. It is the responsibility of the ALJ, not the Court, to resolve ambiguities. *Magallanes,* 881 F.2d at 750 (citations omitted); *see also Fair*, 885 F.2d at 604 (where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing). Accordingly, the Court finds that the ALJ properly considered the psychological examination in finding that Plaintiff's symptom allegations were not credible or reliable.

The ALJ is in a unique position to review all of the evidence and observe the Plaintiff in person. Where, as here, the ALJ provided specific and clear and convincing reasons for rejecting a Plaintiff's testimony, it is well within his province to do so. *See Lingenfelter*, 504 F.3d at 1036.

**D.    Whether ALJ Berlin Properly Evaluated Plaintiff's RFC**

Finally, Plaintiff argues the ALJ failed to properly evaluate his RFC and failed to include all of his limitations in the hypothetical posed to the vocational expert. Specifically, Plaintiff argues that the ALJ failed to properly credit the opinion of Dr. Rosenberg, failed to credit his subjective complaint testimony, and failed to consider all the medical evidence regarding his functional limitations.

    1.    Plaintiff's RFC Evaluation

In his decision, ALJ Berlin determined that Plaintiff retained the following RFC:

> He can lift/carry 50 pounds occasionally and 25 pounds frequently;

> stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. He can occasionally stoop, kneel, crouch, and crawl. There are no other non-exertional limitations (20 CFR 404.1545, 416.945). This residual functional capacity comports with a limited range of medium work activities. The claimant's symptom allegations to the contrary are not credible or reliable, for the reasons set forth in the body of this decision.

(AR 20.)

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *5). "SSR 96-8p directs that '[c]areful consideration' be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" *Robbins*, 466 F.3d at 883 (quoting SSR 96-8p, 1996 WL 374184, at *5). "When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." *Robbins*, 466 F.3d at 883 (internal citations omitted).

As discussed in Sections B and C above, the Court finds that the ALJ properly considered and rejected Dr. Rosenberg's opinions and Plaintiff's subjective complaints. Accordingly, it was unnecessary for the ALJ to consider them in his evaluation of Plaintiff's RFC. *Bayliss*, 427 F.3d at 1217 (citing SSR 96-8p) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."). Thus, ALJ Berlin properly evaluated Plaintiff's RFC and his decision is supported by substantial evidence in the record.

2. Vocational Expert Hypothetical

If the ALJ determines that a claimant is unable to perform past relevant work, he must then show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms,

functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). There are two ways to meet this burden: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Here, because Plaintiff had both exertional and non-exertional limitations, the ALJ elected to call a vocational expert to testify at the administrative hearing. (AR 301-11.)

"[T]he ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Id.* at 1101. "At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration. *Id.* (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). The vocational expert then testifies as to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled. *Id.* (citation omitted.)

"The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.* (citation omitted). However, the ALJ need only include those limitations supported by substantial evidence. *Robbins*, 466 F.3d at 885. If the ALJ does not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included. *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir.1997). Consequently, "if the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984).

At the March 12, 2007 hearing, ALJ Berlin posed the following hypothetical to Stephen Davis, the vocational expert:

> As you answer these please, assume a person of the same age, education, and work experience as the claimant has. And for the first hypothetical, assume further that the person can lift and carry 100 pounds occasionally, 50 pounds frequently; sit 6 hours out of an 8-hour day, with normal breaks; and stand 6 hours out of an 8-hour day with normal breaks. Could a person with these limitations be able to perform either of the claimant's past jobs either as they performed

Page 18 of 19

them or as generally performed in the national economy?

(AR 302.) The vocational expert answered in the affirmative. (AR 302.)

The ALJ then provided a second hypothetical question:

> As a second hypothetical, assume further that the person can lift and carry no more than 50 pounds occasionally, 25 pounds frequently. Can no more than occasionally stoop, kneel, crouch, or crawl. Would a person with those limitations be able to perform either of the claimant's past jobs either as he performed them or as generally performed in the national economy?

(AR 303.) The vocational expert answered in the negative, but added that there were unskilled jobs that could be performed, such as a call-out operator and table worker. (AR 303-04.)

Here, although Plaintiff argues that the ALJ failed to credit Dr. Rosenberg's opinion and his own subjective complaints, the Court has already determined that ALJ Berlin properly rejected them and, therefore, it was unnecessary for the ALJ to include them in the hypotheticals. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper."); *see also Robbins*, 466 F.3d at 885 (In hypotheticals posed to a vocational expert the ALJ must only include those limitations supported by substantial evidence). Thus, the Court finds that the ALJ's second hypothetical question is properly supported by substantial evidence in the record, as discussed in Sections B & C above. Because the ALJ's hypothetical included all of the limitations that he found credible and supported by substantial evidence in the record, the hypothetical was properly posed.

## V.  CONCLUSION

Based on the foregoing analysis, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: March 30, 2009

MARIA ELENA JAMES
United States Magistrate Judge